**INTERNATIONAL ASSOCIATION OF MACHINISTS, LODGE NO. 6, Appellant,**

v.

**FALSTAFF BREWING CORPORATION, Appellee.**

No. 13430.

Court of Civil Appeals of Texas.

Houston.

Oct. 22, 1959.

Rehearing Denied Nov. 19, 1959.

Law Offices of Warner F. Brock, J. Thomas Kirtley, Jr., Houston, for appellant.

Dibrell, Dibrell & Greer, Louis J. Dibrell, Galveston, for appellee.

BELL, Chief Justice.

The appellant filed suit against appellee in which it was sought to have a contract it had entered into with Galveston-Houston Breweries, Inc., its successors and assigns, declared to be in full force and effect with Falstaff Brewing Corporation, and to obtain specific enforcement of said contract. The contract covered the matter of wages and working conditions for machinists employed by Galveston-Houston Breweries, Inc., at the latter's brewery in Galveston. Appellant's theory was that since the contract recited it was entered into between appellant and Galveston-Houston Breweries, Inc., their successors and assigns, that when appellee bought the brewery from Galveston-Houston Breweries, Inc., appellee became bound by the contract.

Trial was to a jury, but after all testimony had been introduced, the Court on motion of appellee instructed the jury to return a verdict for appellee. On such verdict the Court rendered judgment that appellant take nothing.

The contract was one entered into by the appellant for the benefit of its members and related to wages and working condi-

tions of machinists employed in the plant of Galveston-Houston Breweries, Inc. The contract was effective April 26, 1954, and was to continue until April 26, 1955, and from year to year thereafter, except either party could negotiate for changes by giving the other party 60 days notice prior to April 26 of any year. By written agreement the contract was specifically extended to February 14, 1956, and from year to year thereafter, except either party desiring to amend it should give notice of such desire 60 days prior to February 14 of any subsequent year.

The testimony reflects that in 1956 Mr. Edward A. Stenzel was the owner of all of the capital stock of Galveston-Houston Breweries, Inc. While there is much evidence covering the manner in which Mr. Stenzel ultimately became the owner of the stock, we take no further notice of such because we do not think it material to a disposition of the case. In 1956 the Galveston-Houston Breweries, Inc., hereinafter called Galveston Company, was in financial difficulty. Mr. Stenzel decided to obtain a purchaser for the brewery plant. The plant was located in Galveston. After some negotiation with appellee, the Galveston Company agreed to sell certain lands, the buildings thereon, and certain machinery and equipment. The contract between the Galveston Company and appellee is dated February 28, 1956. By the contract appellee agreed to purchase the assets set out in the contract. Without enumerating the items of property, it suffices to say that substantially all equipment, machinery, real estate, including easements, used by the Galveston Company in the operation of its brewery were sold to appellee. Accounts receivable, notes receivable, certain land, automobiles and equipment were not sold.

In consideration of such sale appellee agreed to pay the Galveston Company $1,300,000 and agreed to assume and discharge the obligation of Galveston Company in respect to vacation pay for hourly employees provided in the existing, current union contracts covering same. The contract expressly provided that the Galveston Company would pay and discharge or make provision for payment and discharge of all of its outstanding debts, liabilities and obligations, contingent or determined, "including all debts, liabilities and obligations that it may now or hereafter have to its employees other than in respect of vacation pay for its hourly employees."

The contract contemplated that the Galveston Company would cease making beer and it conveyed its title to all beer labels to appellee. It was contemplated that the trade names used by the Galveston Company would be retired and in fact they have never been used by appellee.

The sale was to be completed on March 30, 1956. Appellee in the meantime had the right to and did send its representatives in the plant to make extensive changes and repairs in preparation for its operation by appellee when the sale was consummated. The sale was consummated on March 30, 1956. The Galveston Company ceased to make beer, but it had on hand and under the contract was permitted to sell some 90,000 cases of beer it had bottled, and also a substantial number of kegs of beer. The Galveston Company continued in existence as a corporate entity but only for the purpose of continuing to sell and distribute root beer syrup. It changed its name on April 24, 1956 to "Triple XXX Corporation."

About March 16, 1956, the representatives of appellant contacted representatives of appellee and asserted the collective bargaining contract was binding on appellee because appellee was a successor of the Galveston Company. Such representatives complained that two employees had been laid off in violation of the seniority provisions of the contract. These persons were laid off between February 28, 1956 and March 30, 1956, during the time the brewery was still being operated by the Galveston Company. Appellee took the position it was not bound by the contract. It should be noted that appellee, through its repre-

sentative, knew the contents of the contract.

■ We have reached the conclusion there was no fact issue raised by the evidence and that the Trial Court correctly instructed the jury to return a verdict for appellee and correctly entered judgment for appellee.

Appellee was not legally "a successor." The term "successor" in common parlance has many meanings. Broadly speaking, when the term successor is used in common parlance it means anyone who follows. However, when used as a legal term applying to corporations, it has a more restricted meaning. As applied to corporations "successor" does not ordinarily connote an assignee, but is normally used in respect to corporate entities, including corporations becoming invested with the rights and assuming the burdens of another corporation by amalgamation, consolidation, or duly authorized legal succession, and does not contemplate acquisition by ordinary purchase from another corporation, and, in respect to natural persons, is apt and appropriate term to designate one to whom property descends or estate of decedent. See In re Murray Realty Company, D.C., 35 F.Supp. 417, and In re New York S. & W. Ry. Co., 109 F.2d 988, certiorari denied New York Trust Co. v. New York S. & W. R. Co., 310 U.S. 633, 60 S.Ct. 1075, 84 L.Ed. 1402.

Here the facts indisputably showed that appellee was a separate corporate entity operating breweries in several places throughout the United States. It did not consolidate with the Galveston Company. It did not buy any of the corporate stock of the Galveston Company. It did not even buy all of the assets of the Galveston Company, though it is admitted it bought the real estate on which the brewery was located and most of the equipment and machinery used in the operation of the brewery. However, while after the purchase of these assets, the Galveston Company did not have the facilities to operate a brewery, it continued as a corporate entity to sell and distribute beer it had on hand and also root beer syrup. The Galveston Company remained, by the express terms of the contract of sale with appellee, obligated to pay and discharge all of its debts and obligations, or to arrange for their payment or discharge. Too, it remained the owner of some of its assets in the form of notes and accounts receivable and certain real estate and equipment.

We have found no Texas cases and none have been cited covering the case here involved. There are two New York cases which we deem applicable in principle which sustain our conclusion.

In the case of Application of Swift & Company, Sup., 76 N.Y.S.2d 881, a suit was brought by Swift & Company against International Union of Operating Engineers, Locals 30 and 30A, to set aside notice of arbitration and to stay the arbitration requested by the notice. The Union had a contract with Clayton Packing Company, which purported to be binding on the successors, assigns or substitutes. Swift bought the property where Clayton operated a packing plant as a lessee and then set up its own operations. It knew of the contract between Clayton and the Union, but refused to assume any obligations under it. The court held Swift was not bound by the contract because they had not assumed it expressly or impliedly.

See also Carouso v. Empire Case Goods Co., 271 App.Div. 149, 63 N.Y.S.2d 35, affirmed 297 N.Y. 514, 74 N.E.2d 462.

Appellant cites the case of Polaner v. Gold Metal Grill, Inc., Ohio Com.Pl., 117 N.E.2d 62. The case does support its position. However, the case was by the Court of Common Pleas of Franklin County, Ohio. We are not in accord with it.

Even should it be said that appellee is a successor to the Galveston Company, we hold appellee is not bound by the contract. Certainly the Union and the Galveston Company could not bind appellee. If ap-

pellee is bound, it must be because it expressly or impliedly agreed to be bound by the contract. The contract between the Galveston Company and appellee, however, negatives the existence of an agreement by appellee to be bound except as to vacation pay for hourly employees. The contract provided appellee would pay vacation pay to hourly employees as provided in the contract and that all other obligations to the employees then existing or thereafter arising would be discharged by the Galveston Company. This negatives any agreement by appellee to be bound by the contract otherwise than specifically provided.

■■ Appellant seeks in effect to have us hold that the contract related to the labor relations in respect to the operation of the brewery on the property where the Galveston Company had its brewery and since the contract was entered into between appellant and the Galveston Company and its successors, the obligations of the contract attach to the land. To state it otherwise, it seeks to have the obligations of the contract held to be covenants running with the land. Appellant cites the case of Anderson v. Rowland, 18 Tex.Civ.App. 460, 44 S.W. 911. In that case Smith sold a lot of land to Rowland and in the deed there was an agreement by Smith not to allow any tract in the block owned by Smith to be used as a place to sell intoxicating liquor. Thereafter Smith sold to Clauss, who rented the property he had bought to Anderson who opened a saloon. The court enforced the restriction in the deed, saying it was unnecessary to decide whether it was a personal covenant or a covenant running with the land, and that anyone purchasing with notice was bound by the covenant.

It is to be noted that this covenant related to land and its uses. Equity recognizes certain covenants that do not run with the land, but such covenants, before they will be enforced as against subsequent purchasers, must concern the land or its use. Montgomery v. Creager, Tex.Civ. App., 22 S.W.2d 463; Pomeroy's Equity, § 1295.

In the case of Montgomery v. Creager, Creager had agreed with his former partner Montgomery that he would buy gasoline from Montgomery for one year for sale at the filling station which Creager had gotten in the distribution of the assets of the partnership existing between the two. Within the year, Creager sold the station to Ford, who did not buy gasoline from Montgomery. Ford had notice of the agreement. The court refused to enforce the agreement as against Ford, who had not assumed the contract because the covenant did not relate to the use of the land.

In the case before us the contract did not relate to the use of the land. It was a contract relating to the wages and working conditions that would be maintained between appellant's members and the Galveston Company.

It is asserted that counsel for appellee recognized appellee was a successor to the Galveston Company because he wrote the City of Galveston stating appellee was a successor. He wrote asserting appellee's rights to easements it had acquired in the purchase. The easements held by the Galveston Company ran in favor of its successors. We attach no significance to this because appellee had not agreed to be bound by the labor contract even if it was a successor. Too, it was a successor in the broad sense of the term specifically with regard to the easements because it had purchased the Galveston Company's easement rights.

■ We do not mean to hold that a different legal entity might not under any circumstances be bound by the contract. If a new legal entity succeeded an old one as a mere subterfuge to defeat liability under the contract, there would be liability in the new entity. We have no such case here.

The judgment of the Trial Court is affirmed.