**FARM AND HOME SAVINGS ASSOCIATION, Appellant,**

v.

**Richard C. STRAUSS, Trustee, Appellee.**

No. 05–82–01405–CV.

Court of Appeals of Texas, Dallas.

May 9, 1984.

Rehearing Denied June 6, 1984.

Colbert F. Bryant, Luke Madole, Dallas, for appellant.

John L. Hauer, Bart Wulff, Dallas, for appellee.

Before STEPHENS, WHITHAM and STEWART, JJ.

*On Motion for Rehearing*

WHITHAM, Justice.

We grant the motion for rehearing of appellee, Richard C. Strauss, Trustee, and withdraw our opinion of February 17, 1984. The following is now our opinion.

Appellant, Farm and Home Savings Association, appeals a declaratory judgment in favor of appellee, Richard C. Strauss, Trustee, construing a contract between the parties. We disagree with the trial court's declaration. Accordingly, we reverse and render the declaratory judgment which the trial court should have rendered.

Before trial, both parties filed motions for judgment contending that the contract was unambiguous and urging declaration of each party's particular interpretation. The trial court overruled both motions, proceeded to jury trial, received a jury verdict on the mutual intent of the parties and rendered judgment on the verdict. On appeal, both parties again contend that the contract is unambiguous. It is elementary that if there is no ambiguity,

the construction of the written instrument is a question of law for the court. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968).

> It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls.

*Pinehurst,* 432 S.W.2d at 518. We agree with the parties that the contract is unambiguous and conclude, therefore, that construction of the written instrument is a question of law for the court. In accordance with *Pinehurst,* we look to the instrument alone to express the intent of the parties.

The parties tell us that the dispute centers on three paragraphs of the contract. Thus, we place these three paragraphs before us to determine "the intention of the parties as expressed or as is apparent in the writing." *Pinehurst,* 432 S.W.2d at 518. In the language of the paragraphs, Farm and Home is "Purchaser" and Strauss is "Seller." Paragraph 13 is the first. Paragraph 13 reads:

> *Additional Covenants.* Purchaser hereby covenants and agrees that if it elects to construct improvements on the Property it will construct upon the Property a "first class office facility" and further that such facility will comply with the following:
>
> (a) The improvements to be constructed on the Property shall not exceed one-story or 25 feet in height.
>
> (b) The facade of any improvements to be constructed on the Property shall be brick or other material reasonably approved in writing by Seller.
>
> (c) deleted.
>
> (d) All utilities on the Property shall be located underground and, subject to

paragraph 12 hereof, shall be paid for by Purchaser.

The covenants and obligations of this Paragraph 13 shall not run with the land, but shall survive closing and not be merged thereon.

Immediately following paragraph 13 there appears the following underscored language: "See RIDER attached hereto and made a part hereof." The "rider" is identified as paragraph 13.2. Paragraph 13.2 is the second paragraph of interest. Paragraph 13.2 provides:

In the event Purchaser elects, after Closing, not to construct improvements on the Property, Purchaser agrees that it will not sell the Property to a third party without first giving written notice of the terms and conditions of any such sale to Seller, whereupon Seller shall have thirty (30) days to meet the terms and conditions of such third party sale. If Seller elects to repurchase the Property, it shall do so upon the same terms and conditions and within the same time limits as are contained in such third party offer. If Purchaser shall not have received written notice from Seller of the election of Seller to repurchase the Property within said 30-day period, Seller's right of first refusal herein contained shall be deemed to have been waived.

Last, there is Paragraph 14(d) which states:

*Parties Bound.* This Contract shall be binding upon and inure to the benefit of Seller and Purchaser, and their respective heirs, personal representatives, successors and permitted assigns.

Both parties agree that the building restrictions of paragraph 13 are binding upon Farm and Home. The parties disagree on whether the building restrictions are binding upon subsequent purchasers from Farm and Home. Strauss contends that the building restrictions are binding on subsequent purchasers from Farm and Home to the extent that failure to construct in accordance with paragraph 13 renders Farm and Home liable for damages. Farm and Home asserts that the building restrictions are not binding on its subsequent

purchasers and that Strauss' sole remedy in the event of sale by Farm and Home prior to construction is his right of first refusal contained in paragraph 13.2 of the contract. We must declare the answer.

■ First we read paragraph 13. The first sentence of paragraph 13 clearly refers only to Farm and Home. Moreover, in the second and last sentence of paragraph 13 the parties took care to make known that the building restrictions were personal to Farm and Home only by writing that "[t]he covenants and obligations of this Paragraph 13 shall not run with the land...." Further, by continuing with the clause "but shall survive closing and not be merged thereon," the second and last sentence of paragraph 13 provides a contractual means of obligating Farm and Home (not subsequent purchasers) to comply with the building restrictions in paragraph 13 after the property is conveyed to Farm and Home. Thus, we find no language in paragraph 13 whereby it is "expressed or ... apparent in the writing" that a subsequent purchaser from Farm and Home is required to comply with the building restrictions.

■ Strauss argues, however, that if we read paragraph 13 together with paragraph 14(d), we will find language which would bind subsequent purchasers from Farm and Home. Strauss points to the word "successors" and insists that "successors," as used in paragraph 14(d), means subsequent purchasers from Farm and Home. We disagree. We conclude that the meaning of "successors," as used in paragraph 14(d), is to be found in *International Association of Machinists v. Falstaff Brewing Corp.*, 328 S.W.2d 778, 781 (Tex.Civ.App.—Houston 1959, no writ). In *International Association,* the labor contract recited that it was entered into between the association and Galveston-Houston Breweries, Inc., their successors and assigns. The association contended that, when Falstaff bought the brewery from Galveston-Houston Breweries, Inc., Falstaff became bound by the contract as successors to Galveston-

Houston. The court disposed of the association's argument as follows:

> Appellee was not legally "a successor." The term "successor" in common parlance has many meanings. Broadly speaking, when the term successor is used in common parlance it means anyone who follows. However, when used as a legal term applying to corporations, it has a more restricted meaning. As applied to corporations "successor" does not ordinarily connote an assignee, but is normally used in respect to corporate entities, including corporations becoming invested with the rights and assuming the burdens of another corporation by amalgamation, consolidation, or duly authorized legal succession, and does not contemplate acquisition by ordinary purchase from another corporation, and, in respect to natural persons, is apt and appropriate term to designate one to whom property descends or estate of decedent.

328 S.W.2d at 781. Therefore, we conclude that as applied to corporations, or a stock savings association such as Farm and Home, the word "successors," when used in a contractual provision such as paragraph 14(d), is a term of art which does not encompass the third party purchasers of a parcel of land from a corporation envisioned by the parties in this controversy. We hold, therefore, that in the present case a subsequent purchaser of the property from Farm and Home would not be a successor to Farm and Home within the meaning of paragraph 14(d). Therefore, nowhere in paragraphs 13 and 14(d), when read together, do we find language that would bind subsequent purchasers of the property from Farm and Home to the covenants and obligations contained in paragraph 13 of the contract.

This brings us to the rider to the contract, paragraph 13.2. This rider appears as the last and unnumbered page to the contract. Immediately following paragraph 13, and just above the introduction to paragraph 14, appears the underscored language: "See RIDER attached hereto and made a part hereof." It is obvious to the court that this language was typed into an existing draft of the contract. The spacing of the typewritten lines tell us as much. We conclude that the insertion of the notice of a rider immediately following paragraph 13 means that a relationship exists between the provisions of paragraph 13 and the provisions of the rider, a paragraph given the sequential number "13.2" by the parties. We conclude further that this relationship between the two paragraphs was intended to afford Strauss his sole protection. In short, Strauss must exercise his right of first refusal or suffer the construction consequences should Farm and Home sell the parcel of land to a third party.

We hold, therefore, the contract to mean that if Farm and Home (not subsequent purchasers) elects to construct improvements on the property, then those improvements must comply with paragraph 13; that if Farm and Home wishes to sell the property prior to its construction of improvements, it shall not sell the property to a third party without affording Strauss his right of first refusal; and that if Strauss fails to exercise his right of first refusal, then Farm and Home shall be relieved of any liability for damages to Strauss for failure of a subsequent purchaser to comply with the building restrictions contained in paragraph 13 of the contract.

We reverse the judgment of the trial court and we render judgment declaring the contract to mean that if Farm and Home wishes to sell the property prior to its constructing improvements on the property, Farm and Home shall not sell the property to a third party without affording Strauss his right of first refusal as provided in the rider, paragraph 13.2, to the contract and that in the event Strauss fails to exercise that right of first refusal as provided in the rider, Farm and Home shall have the right to sell the property free and clear of the covenants and obligations of paragraph 13 and declaring further that the covenants and obligations contained in paragraph 13, by express agreement of the parties, do not run with the land and, therefore, are not binding on subsequent pur-

chasers and declaring further that Farm and Home shall not be liable to Strauss for the failure of any such subsequent purchaser to comply with any of the covenants and obligations of paragraph 13. All costs in the trial court and in this court are taxed against Strauss.