CNOOC SOUTHEAST ASIA LTD., CNOOC Ltd., CNOOC International Limited, CNOOC SES Ltd., and CNOOC Muturi Limited, Appellants,

v.

PALADIN RESOURCES (SUNDA) LIMITED, Appellee.

No. 05–05–01256–CV.

Court of Appeals of Texas, Dallas.

April 24, 2007.

Graham Kerin Blair, Baker & McKenzie, LLP, David M. Gunn, Beck, Redden & Secrest, Houston, for Appellants.

Timothy S. Durst, Baker & Botts, L.L.P., Dallas, for Appellee.

Before Justices WRIGHT, LANG, and LANG–MIERS.

## OPINION ON REHEARING

Opinion by Justice LANG–MIERS.

We grant appellants' motion for rehearing. We withdraw our opinion of August 8, 2006 and vacate the judgment of that date. This is now the opinion of the Court.

This is an accelerated, interlocutory appeal from the denial of a special appearance. The dispute centers on the effect of a forum-selection clause in a contract that designates Texas as the venue and exclusive jurisdiction for lawsuits. We are asked to determine whether this clause is valid and enforceable against entities that did not sign the contract but, because of multiple transfers, assignments and acquisitions, have interests in the contract. We conclude the forum-selection clause is valid and enforceable against CNOOC Southeast Asia Ltd. (SAL), CNOOC Ltd. (LTD) and CNOOC SES Ltd. (SES) and affirm the order of the trial court denying their special appearance. We conclude the forum-selection clause is not valid and enforceable against CNOOC International Limited (International) and CNOOC Muturi Limited (Muturi). We reverse the order denying the special appearance of Interna-

tional and Muturi and render judgment granting the special appearances of International and Muturi.

## BACKGROUND

To determine whether the forum-selection clause is enforceable against these parties we must first analyze their relationships to each other and to the contract.

### Area of Mutual Interest Provision

In 1968, Independent Indonesian American Petroleum Company (IIAPCO) and P.N. Pertambangan Minjak Dan Gas Bumi Nasional (Pertamina) entered into a production-sharing agreement to explore and develop potential petroleum resources in the territorial waters off the southeast coast of Sumatra and the north coast of Java. This agreement became known as the Pertamina Contract.

On that same day, IIAPCO assigned part of its interest in the Pertamina Contract to Warrior International Company and Carver–Dodge International Company. The agreement setting out the rights and duties of IIAPCO, Warrior, and Carver–Dodge became known as the 1968 Operating Agreement. Section 12 of the 1968 Operating Agreement, entitled "Area of Mutual Interest" (AMI), provided that if any party to the agreement acquired a petroleum exploration interest in another part of Indonesia, that party would notify the other parties in writing and offer them the option to participate in the interest pursuant to the terms of their agreement. The AMI clause is the subject of the current lawsuit.

### The 1986 Settlement Agreement

In 1986, a dispute arose between Warrior and IIAPCO over whether the AMI applied to petroleum interests acquired by an affiliate of a party to the 1968 Operat-

ing Agreement. Warrior claimed that Diamond Shamrock, IIAPCO's affiliate, violated the AMI when it acquired oil and gas interests in the Indonesian regions of Aru and Arafuru without giving Warrior the option to participate. Warrior filed a lawsuit against Diamond Shamrock in Dallas County, Texas, and the lawsuit settled in 1986. The 1986 Settlement Agreement provided that "venue and exclusive jurisdiction for claims arising pursuant to this Agreement or other provisions of Section 12 [the AMI] shall lie in Texas." This clause is the subject of the special appearance. The 1986 Settlement Agreement also provided that those provisions apply to Diamond Shamrock, as an affiliate of IIAPCO, as well as its affiliates and Warrior's affiliates. They agreed that the 1986 Settlement Agreement would remain in effect as long as Warrior and Shamrock were parties to the 1968 Operating Agreement as defined in section 17 of the Operating Agreement.

Around 1988, three companies affiliated with the Spanish national oil company, YPF, acquired IIAPCO's working interest in the 1968 Operating Agreement. One of these companies, YPF Maxus Southeast Sumatra B.V. (YPF Maxus) acquired the working interest owned by Diamond Shamrock. Several years later, in 1999, Paladin, a corporation organized under the laws of the British Virgin Islands, acquired Warrior's working interest in the 1968 Operating Agreement.

### 2001 Lawsuit and Settlement

In 2001, Paladin filed a lawsuit against YPF Maxus and YPF Indonesia Ltd., an affiliate of YPF Maxus, alleging that YPF Indonesia violated the AMI by acquiring a petroleum exploration interest in the Jambi Merang Project in Indonesia without giving Paladin the option to participate.[1]

---

1. The defendants filed a special appearance contesting jurisdiction which the trial court overruled.

While the lawsuit was pending, SAL, an affiliate of China National Offshore Oil Corporation, the Chinese state oil company, acquired the shares of several YPF companies, one of which owned the shares of YPF Maxus. While the lawsuit between Paladin and YPF Maxus was pending, SAL changed the name of YPF Maxus to CNOOC Southeast Sumatra B.V. The lawsuit settled, and, at some point, SAL transferred all of the working interests in the 1968 Operating Agreement that had been owned by the YPF companies it acquired to SES, a subsidiary of SAL.

*This Lawsuit*

In 2004, Paladin filed this lawsuit in Dallas County, Texas, against SAL, LTD, SES, International, and Muturi, alleging International and Muturi acquired exploration rights in the Tangguh Project in Indonesia without giving Paladin the option to participate. The CNOOC entities collectively filed a special appearance, arguing the court lacked personal jurisdiction because they are foreign entities and have no contacts with Texas.

Paladin responded, alleging the CNOOC entities consented to jurisdiction in Texas through the forum-selection clause in the 1986 Settlement Agreement between Warrior and Diamond Shamrock, because that agreement was binding on them as successor working interest owners and on their affiliates.

The CNOOC entities argued they did not consent to jurisdiction in Texas because they did not sign the 1986 Settlement Agreement containing the forum-selection clause, and because the 1986 Settlement Agreement expired when Warrior and Diamond Shamrock ceased to be parties to the 1968 Operating Agreement. The CNOOC entities also attached affidavits stating enforcement of the forum-selection clause would be unreasonable and unjust. The trial court

denied the special appearance following a hearing.

## STANDARD OF REVIEW

When we review a trial court's order denying a special appearance, we review the court's factual findings for legal and factual sufficiency and its legal conclusions de novo. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793–94 (Tex.2002); *A & J Printing, Inc. v. DSP Enters., L.L.C.,* 153 S.W.3d 676, 680 (Tex. App.-Dallas 2004, no pet.). When a trial court does not issue findings of fact and conclusions of law, we must imply all findings of fact necessary to support the judgment if they are supported by the evidence. *BMC Software,* 83 S.W.3d at 795.

Here, the trial court did not issue findings of fact and conclusions of law. Consequently, by denying the special appearance, the court impliedly found that the forum-selection clause in the 1986 Settlement Agreement was valid and enforceable. We review the validity and enforceability of a forum-selection clause under an abuse of discretion standard. *My Cafe–CCC, Ltd. v. Lunchstop, Inc.,* 107 S.W.3d 860, 864 (Tex.App.-Dallas 2003, no pet.); *Phoenix Network Techs. v. Neon Sys.,* 177 S.W.3d 605, 610 (Tex.App.-Houston [1st Dist.] 2005, no pet.). We review the trial court's interpretation of a contract containing a forum-selection clause de novo. *Phoenix,* 177 S.W.3d at 610.

## APPLICABLE LAW

A forum-selection clause obtained through freely negotiated agreements does not offend due process, provided it is not unreasonable and unjust. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.,* 184 S.W.3d 242, 248 (Tex.App.-Houston [1st Dist.] 2005, no pet.). However, here, it is undis-

puted that the CNOOC entities did not sign the agreement containing the forum-selection clause. When a party seeks to enforce a forum-selection clause against a nonsignatory to the contract containing the forum-selection clause, that party bears the burden to prove the theory upon which it relies to bind the nonsignatory to the contract. *See, e.g., Tri–State Bldg. Specialties, Inc.,* 184 S.W.3d at 250–52 (alter-ego theory); *Phoenix Network Techs.,* 177 S.W.3d at 622 (theory based on substantially interdependent and concerted misconduct by all defendants); *Coleman v. Klockner & Co. AG,* 180 S.W.3d 577, 586 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (single business enterprise and agency theories); *Walker Ins. Servs. v. Bottle Rock Power Corp.,* 108 S.W.3d 538, 549–53 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (agency/authority theory); *Disney Enters., Inc. v. Esprit Fin., Inc.,* 981 S.W.2d 25, 30 (Tex.App.-San Antonio 1998, pet. dism'd w.o.j.) (agency theory).

■■■ We construe a contract containing a forum-selection clause as we do any contract, according to its plain language. *See Phoenix,* 177 S.W.3d at 615. If a contract is worded so that it can be given a certain or definite legal meaning or interpretation, we will construe the contract as a matter of law. *Enter. Leasing Co. v. Barrios,* 156 S.W.3d 547, 549 (Tex.2004); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). We presume the parties intended every contractual provision to have meaning. *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 180 (Tex.1997). We examine the entire contract in an attempt to harmonize its provisions, and we give effect to all of its provisions so that none will be rendered meaningless. *Frost Nat'l*

*Bank v. L & F Dist., Ltd.,* 165 S.W.3d 310, 311–12 (Tex.2005); *Coker,* 650 S.W.2d at 393.

### ANALYSIS

The issues we must resolve are whether the 1986 Settlement Agreement between Warrior and Diamond Shamrock expired and, if not, whether its forum-selection clause binds the CNOOC entities, all of which are nonsignatories to the 1986 Settlement Agreement.

### A. Has the Settlement Agreement Expired?

■■■ The 1986 Settlement Agreement provides that it "shall remain in full force and effect so long as Diamond Shamrock [and Warrior are parties] to the Operating Agreement, as defined in Section 17 of the Operating Agreement." The CNOOC entities argue this is a self-imposed limit on the life of the 1986 Settlement Agreement and that it expired by its own terms when Diamond Shamrock and Warrior each ceased to be a "party."

But the plain language in section 17 of the 1968 Operating Agreement includes as a "party" "each successor to any or all of the working interest of a Party in the Pertamina Contract."[2] Paladin argues it is a successor to Warrior and SES is a successor to Diamond Shamrock. Accordingly, Paladin argues, Paladin and SES are each a "party" as defined in the 1968 Operating Agreement, keeping the 1986 Settlement Agreement and the forum-selection clause alive.

Appellants ask us to rely on *Farm & Home Savings Association v. Strauss,* 671 S.W.2d 682 (Tex.App.-Dallas 1984, no writ) (op. on reh'g) for the meaning of the word

---

2. Section 17 of the 1968 Operating Agreement defined "Party" as:

 [E]ach original signatory to this Agreement so long as it has a working interest in the Pertamina Contract and each successor to

 any or all of the working interest of a Party in the Pertamina Contract. All of the terms of this Agreement shall inure to the benefit of and be binding upon the lawful successors and assigns of the Parties.

"successor." In that case a provision in the parties' contract stated, "This Contract shall be binding upon and inure to the benefit of Seller and Purchaser, and their respective heirs, personal representatives, successors and permitted assigns." *Id.* at 684. Strauss filed a suit for declaratory judgment to determine whether this provision bound purchasers of property from Farm & Home. Strauss claimed a purchaser of Farm & Home's property would be a "successor" within the meaning of the contractual provision. We disagreed. We concluded that when used to refer to corporations or stock savings associations such as Farm & Home, the term "successor" "is a term of art which does not encompass third party purchasers of a parcel of land from a corporation." *Id.* at 685. We based our conclusion on the meaning of "successor" as found in *International Association of Machinists v. Falstaff Brewing Corp.*, 328 S.W.2d 778, 781 (Tex.Civ.App.-Houston [1st Dist.] 1959, no writ), where the court reasoned:

> Appellee was not legally "a successor." The term "successor" in common parlance has many meanings. Broadly speaking, when the term successor is used in common parlance it means anyone who follows. However, when used as a legal term applying to corporations, it has a more restricted meaning. As applied to corporations "successor" does not ordinarily connote an assignee, but is normally used in respect to corporate entities, including corporations becoming invested with the rights and assuming the burdens of another corporation by amalgamation, consolidation, or duly authorized legal succession, and does not contemplate acquisition by ordinary purchase from another corporation. . . .

*Id.* at 685.

■■■ The CNOOC entities contend Paladin is not a "successor" within this meaning and, as a result, Warrior ceased to be a party to the 1968 Operating Agreement when its interest was acquired by Paladin, and the 1986 Settlement Agreement expired at that time.[3] The CNOOC entities further contend that the parties did not intend for the agreement to continue in perpetuity and intended for it to expire when either of them was no longer a party.

But by expressly incorporating paragraph 17, they demonstrated their intent that the agreement would continue to bind parties succeeding to their working interests. Significantly, the language in paragraph 17 that was incorporated into the 1986 Settlement Agreement refers to "each successor to any or all of the working interests of a Party in this [1968] Pertamina Contract," not to a successor to a party, as was the case with language in *Farm & Home*. As a result, the parties agreed that the 1986 Settlement Agreement would remain in full force and effect so long as Warrior, Diamond Shamrock, or an original signatory to the 1968 Operating Agreement has a working interest in the contract, or so long as a successor to any or all of the working interests of a party to the 1968 Operating Agreement has a working interest. Even if Paladin is not a successor to Warrior in the sense decided in *Farm & Home*,[4] it is a successor to the

---

**3.** Paladin argues the CNOOC entities did not preserve this issue for review because they did not raise it in their written pleadings. However, the CNOOC entities argued this point to the trial court during the hearing on the special appearance. The trial court's order stated it considered the arguments of counsel. As a result, we conclude the issue was preserved. *See* Tex.R.App. P. 33.1(a); *see* also *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 n. 11 (Tex.App.-Houston [1st] Dist.2002, no pet.).

**4.** In its pleadings, Paladin stated it acquired Warrior's stock in October 1999, changed its name to Paladin, and "succeeded to all of Warrior's contractual rights and obligations." The CNOOC entities claim it was Paladin's

working interests of Warrior under the Pertamina Contract. Since Paladin is a successor to any or all of Warrior's working interests and SES is a successor to any or all of Diamond Shamrock's working interests, we conclude the evidence supports the trial court's implied finding that the 1986 Settlement Agreement has not expired. As a result, we conclude the forum-selection clause is enforceable against SES. *See Phoenix Network Techs. (Eur.) Ltd.*, 177 S.W.3d at 620.

We affirm the trial court's order denying SES's special appearance.

## B. Does the Forum–Selection Clause Apply to Affiliates of SES?

The CNOOC entities argue that even if the 1986 Settlement Agreement has not expired, it cannot be interpreted to bind SES's affiliates. They argue they did not sign the agreement containing the forum-selection clause and Paladin did not prove they agreed to be bound by the forum-selection clause or authorized another to bind them to the clause.

### SAL and LTD

■ At the hearing on the CNOOC entities' special appearance, Paladin offered evidence that SAL and LTD agreed to be bound by the 1986 Settlement Agreement containing the forum-selection clause when they signed the 2002 Share Purchase Agreement with the YPF Repsol entities, the companies that indirectly held the IIAPCO/Diamond Shamrock working interests. In the share purchase agreement, the parties included the 1986 Settlement Agreement between Warrior and Diamond Shamrock as one of their "Operating Doc-

uments." The share purchase agreement defined "Operating Documents" as "those agreements under which the joint operation of the Assets is agreed with other companies holding a working interest in the Asset Documents." The share purchase agreement also stated that the "Operating Documents" "are currently in force as far as [YPF is] aware."

We conclude this evidence supports the trial court's implied findings of fact and conclusions of law that SAL and LTD expressly agreed to be bound by the forum-selection clause contained in the 1986 Settlement Agreement.[5] *See Willis v. Donnelly*, 199 S.W.3d 262, 270 (Tex.2006) (party ratifies agreement by expressly agreeing to be bound by it); *Wetzel v. Sullivan, King & Sabom, P.C.*, 745 S.W.2d 78, 81 (Tex.App.-Houston [1st Dist.] 1988, no writ) (op. on reh'g) (ratification occurs when party recognizes validity of contract by affirmatively acknowledging it).

### International and Muturi

We reach a different conclusion with respect to International and Muturi. At the special appearance hearing, Paladin argued only that International and Muturi are bound by the 1986 Settlement Agreement containing the forum-selection clause because they are affiliates of SES and they consented to jurisdiction when their parent corporations, LTD and SAL, respectively, took on the obligations of the 1986 Settlement Agreement.

International and Muturi argue on appeal that, whether or not they meet the definition of "affiliates" in the 1986 Settle-

---

burden to prove it was a successor at the special appearance hearing and that it did not do so. We do not reach this issue because we conclude the definition in *Farm & Home* does not apply to the issue of whether the 1986 Settlement Agreement has expired.

5. Paladin raises additional theories to show the forum-selection clause is enforceable against SAL and LTD. However, because we have concluded that SAL and LTD expressly agreed to be bound by the forum-selection clause, we do not address Paladin's other theories.

ment Agreement, they cannot be bound by a forum-selection clause in a contract they did not sign unless Paladin proves they are bound under general contract or agency principles. We agree.

■ In legal proceedings, "subsidiary corporations and parent corporations are separate and distinct 'persons' as a matter of law, and the separate entity of corporations will generally be observed by the courts even where one company may dominate or control the other company, or treats the other company as a mere department, instrumentality, or agency." *Valero S. Tex. Processing Co. v. Starr County Appraisal Dist.*, 954 S.W.2d 863, 866 (Tex.App.-San Antonio 1997, pet. denied).

*Transaction Participants*

■ Paladin argues International and Muturi are bound because they are transaction participants, citing our opinion in *Accelerated Christian Education, Inc. v. Oracle Corp.*, 925 S.W.2d 66 (Tex.App.-Dallas 1996), *overruled in part on other grounds by In re Tyco Electronics Power Systems, Inc.*, No. 05–04–01808–CV, 2005 WL 237232 (Tex.App.-Dallas Feb.2, 2005, orig. proceeding) (mem.op.). Paladin did not raise this issue below as a basis for jurisdiction. But even if it had, we conclude International and Muturi do not meet the definition of transaction participants in *Accelerated Christian.*

In that case, Accelerated Christian sued Oracle and Oracle's regional sales manager for breach of contract and tort claims. Oracle moved to dismiss the lawsuit because a forum-selection clause in the parties' contract required legal actions to be filed in California. Accelerated Christian argued the regional sales manager could not enforce the forum-selection clause because he was not a party to the contract containing the clause. Citing federal forum-selection clause cases, we concluded

that "a valid forum selection clause governs all transaction participants, regardless of whether the participants were actual signatories to the contract." *Id.* at 75 (citing *Brock v. Entre Computer Ctrs., Inc.*, 740 F.Supp. 428, 431 (E.D.Tex.1990) and *Clinton v. Janger*, 583 F.Supp. 284, 290 (N.D.Ill.1984)). We defined "transaction participant" to mean "an employee of one of the contracting parties who is individually named by another contracting party in a suit arising out of the contract containing the forum-selection clause." *Id.*

In analyzing whether International and Muturi are transaction participants in this case, we reviewed other state and federal Texas cases discussing whether a party is a transaction participant for purposes of enforcement of a forum-selection clause, including those cited by Paladin. In each case, a nonsignatory defendant was attempting to enforce the forum-selection clause against the signatory plaintiff, which did not want the clause enforced. *See, e.g., Tex. Source Group, Inc. v. CCH, Inc.*, 967 F.Supp. 234, 237 (S.D.Tex.1997); *Brock*, 740 F.Supp. at 430–31; *Clinton*, 583 F.Supp. at 289–90; *Robbins & Myers, Inc. v. J.M. Humber Corp.*, No. 05–01–00139–CV, 2002 WL 418206 (Tex.App.-Dallas Mar.19, 2002, no pet.) (not designated for publication). Additionally, in each case, the nonsignatory defendants were either representatives or employees of the signatory defendants, or a third-party beneficiary of the contract containing the forum-selection clause.

Here, we have a corporation seeking to enforce a forum-selection clause against nonsignatory corporations, which the record does not establish are employees or officers of parties to the contract, or benefit from the contract containing the forum-selection clause. As a result, and based on the record, we cannot conclude that Pala-

din proved International and Muturi are transaction participants.

*Authority*

 Further, Paladin did not offer any evidence that International and Muturi authorized anyone to bind them to the forum-selection clause. In a footnote to its response to the CNOOC entities' special appearance, Paladin generally stated the law of agency, but did not assert any facts or otherwise demonstrate that an agency relationship existed between International and Muturi, on the one hand, and SAL, LTD, or SES on the other.

 The existence of an agency relationship may be based on actual or apparent authority. *Walker Ins. Servs.*, 108 S.W.3d at 550. An essential element of the principal-agent relationship is the alleged principal's right to control the actions of the alleged agent. *Id.* Actual authority is created through written or spoken words or conduct of the principal communicated to the agent. *Id.* It may be implied from the conduct of the parties or from the facts and circumstances surrounding the transaction in question. *Id.* But a finding of actual authority cannot be based merely on the words or deeds of the agent. *Id.* Apparent authority, on the other hand, is created by written or spoken words or conduct by the principal to third parties, not to the agent. *Id.* at 550. Absent actual or apparent authority, an agent cannot bind a principal. *Disney Enters., Inc.*, 981 S.W.2d at 30. "Without acts of the purported principal, acts of a purported agent which may mislead persons into false inferences of authority, however reasonable, will not serve as a predicate for apparent authority." *Id.* (citing *Southwest Land Title Co. v. Gemini Financial Co.*, 752 S.W.2d 5, 7 (Tex.App.-Dallas 1988, no writ)).

To show actual authority, Paladin was required to show that International and Muturi, the principals in this situation, communicated to SAL, LTD, or SES that they had authority to bind International and Muturi to the forum-selection clause. To establish apparent authority, Paladin was required to show that International and Muturi said or did something that would lead a reasonably prudent third party to believe that SAL, LTD, or SES had the authority to bind them to the forum-selection clause. *See id.* at 550–51. We do not look at the words or conduct of the alleged agent—in this case, SAL, LTD, or SES. Rather, we consider only the words or conduct of the principal—in this case, International and Muturi—to make this determination. *Id.* at 551. Here, the record does not contain any evidence that International or Muturi did or said anything to authorize SAL, LTD, or SES to bind them to the forum-selection clause.

We conclude Paladin did not carry its burden on this record to show the forum-selection clause is enforceable against International and Muturi.[6] We reverse the trial court's order denying the special appearance of International and Muturi and render judgment granting their special appearance.

---

6. Paladin also argues the CNOOC entities are subject to the forum-selection clause on the theories that they are closely-related to contract signatories, they are accused of interdependent misconduct, and equitable estoppel. Paladin did not assert these issues below as to International and Muturi. Moreover, Paladin did not present any evidence that International and Muturi sought to benefit from the 1986 Settlement Agreement containing the forum-selection clause while simultaneously denying the applicability of the clause. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 741 (Tex.2005) (orig. proceeding) (nonsignatory cannot be required to arbitrate claim unless it seeks, through claim, to derive direct benefit from contract containing arbitration provision).

### Conclusion

In summary, we conclude the evidence supports the trial court's order denying the special appearance as to CNOOC Southeast Asia Ltd, CNOOC Limited, and CNOOC SES Ltd.[7] We further conclude the trial court erred by denying the special appearance of CNOOC International Limited and CNOOC Muturi Limited. Accordingly, we overrule the CNOOC entities' sole issue in part and sustain it in part. We affirm the order of the trial court as to CNOOC Southeast Asia Ltd, CNOOC Limited, and CNOOC SES Ltd. We reverse the order of the trial court as to CNOOC International Limited and CNOOC Muturi Limited and render judgment granting the special appearance of CNOOC International Limited and CNOOC Muturi Limited.

---

7. SAL, LTD, and SES do not challenge the trial court's implied findings of fact and conclusions of law that enforcement of the forum-selection clause against them would not be unreasonable and unjust or that the clause was not invalid because of fraud or overreaching. *See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 793 (Tex. 2005). As a result, we are not asked to decide this issue.