**Opinion issued June 19, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-12-00708-CV**

_____

**WILLIAM BUSH AND MARI MARC S.A. DE C.V., Appellants**

**V.**

**CARDTRONICS, INC. AND CARDTRONICS S.A. DE C.V., Appellees**

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-31459**

## MEMORANDUM OPINION

Appellant William Bush[1] challenges the trial court's judgment granting

appellees Cardtronics, Inc. ("Cardtronics USA") and Cardtronics Mexico, S.A. de

---

[1]    Mari Marc S.A. de C.V. was identified as another appellant but ultimately did not file an appellant's brief. After sending notice, we dismissed Mari Marc S.A. de C.V. from the appeal.

C.V.'s motion to dismiss based on a forum selection clause. In four issues, Bush argues that the forum selection clause does not govern because (1) Bush performed under an earlier contract; (2) the latter contract did not replace the earlier contract by novation; (3) the latter contract had not been ratified; and (4) the forum selection clause under the latter contract was fraudulently induced.

We affirm.

## Background

William Bush became involved in the ATM business in Mexico when he noticed a lack of ATMs around tourist areas. In 2005, Bush began dealing with a company identified by the parties as CSS. During this time, in 2006, Cardtronics USA acquired CSS as a subsidiary and renamed it Cardtronics Mexico.

Cardtronics Mexico operates through distributor agreements to manage the distribution and installation of ATMs in various merchant locations. Under the distributor agreements, the distributor would seek out merchants to negotiate the installation of ATMs. If a merchant was interested, a merchant agreement would be created between Cardtronics Mexico and the merchant. Monthly commissions would then be paid to the distributor based on the ATM transactions.

On July 31, 2006, William Bush and Cardtronics Mexico executed a distributor agreement based on this structure. This contract was written in English and, accordingly, is referred to by the parties as the English Contract. This

contract served as the initial agreement between Bush and Cardtronics Mexico and included Texas venue and choice of law provisions. However, before the English Contract was executed, Cardtronics Mexico discussed with Bush the development of a contract that would include Mexican law. Specifically, in an email sent to Bush on July 17, 2006, Cardtronics Mexico stated:

> We are going to be developing a contract that includes Mexican law, and therefore will be between you and Cardtronics Mexico. Some of the points that are included in the agreement we gave you to review will still be there, so those do serve as a good base point for us to start discussions. However, there will be more added in order to make sure that you are covered in Mexico.

According to the record, Mexico requires buyers and sellers to register with the Mexican Treasury and acquire a Federal Contributors Registry Number to monitor tax collections. Since he was not registered, Bush could not receive ATM commissions directly from Cardtronics Mexico. Instead, he partnered with Mari Marc, S.A. de C.V. to operate his ATM business and to receive payments. Antonio Moreno is the sole managing director of Mari Marc. There was a delay in developing the second contract due to Moreno's decision to evaluate the English Contract's performance and cash flow and Mari Marc's difficulty in acquiring financing to purchase more ATMs for distribution.

In 2007, Moreno's assistant directed Cardtronics Mexico to send all commissions to Mari Marc. Soon after, Bush contacted Cardtronics Mexico to put

the new distributor agreement in Mari Marc's name and to send it to Moreno to sign. In one email to Cardtronics Mexico, Bush explained,

> When we last spoke in person, I requested the distributorship agreement to be put to Mari Marc, we decided it was best to wait until the distributorship had been fully translated into Spanish and then we could sign under Mari Marc. . . .

In a second email, Bush said, "Ok, Antonio [Moreno] can send you the Acta for Mari Marc. He's also going to be the signer."

On May 21, 2007, Cardtronics Mexico and Moreno, as sole legal representative of Mari Marc, executed a second distributor agreement, known as the Spanish Contract. This agreement was written in Spanish and incorporated many of the same provisions from the English Contract. However, this agreement provided Mexican venue and choice of law provisions. Moreno testified that, before signing, he reviewed and discussed the Spanish Contract with Bush.

> Q. Did you -- when you got the -- the contract, the exhibit that we're looking at, No. 29 -- I'm sorry, 25, excuse me -- did you discuss it with Mr. Bush?
>
> A. We both looked that the -- saw the contract, and saw that it was a distribution contract. And he told me to go ahead. Mainly what we saw was, obviously, the breakdown of commissions.
>
> . . .
>
> Q. And so you and Mr. Bush did look at this agreement and talk about it before you signed it?
>
> Mr. Davis: Objection, form.

4

A.    We saw the breakdown of the commissions as part of reading the contract.

. . .

Q.    And you did -- did I understand you to say that you and Mr. Bush did focus on that and agree that it was the correct breakdown of commissions before you signed the contract?

Mr. Davis: Objection, form.

A.    Correct.  Again, we reviewed the contract.  We looked at the addendum of the commissions and we signed the contract.

Despite Moreno's legal status as the sole managing director of Mari Marc, Bush testified that he primarily ran the company's operations.  In his deposition, Bush stated that he was involved in the ATM business and that Antonio Moreno was present for investment and legal purposes only:

Like I said, Antonio was strictly a financial backer and Mexican national that, you know, spoke the language fluently, knew how the business operations in Mexico legally were supposed to go. . . .

I was focused on the entire business.  Antonio had very, very little to do with the day-to-day operation of Mari Marc.  Basically, I'd come in and drop paperwork on his desk and say, We need to sign this, this, this, and this.  And he would sign it.

Bush and Mari Marc filed suit in Texas against Cardtronics USA and Cardtronics Mexico on May 19, 2010, alleging breach of a distribution agreement, tortious interference, and fraudulent inducement.  Bush and Mari Marc alleged that Cardtronics USA and Cardtronics Mexico strained Bush and Mari Marc's

relationships with business contacts, took over business contracts arranged by Mari Marc, and fraudulently induced the signing of the Spanish Contract.

Cardtronics USA and Cardtronics Mexico filed a motion to dismiss based on the forum selection clause in the Spanish Contract and the doctrine of *forum non conveniens*. Specifically, Cardtronics USA and Cardtronics Mexico argued that the Mexican forum selection clause should be enforced because there was no performance under the English Contract, the Spanish Contract was enforceable under the doctrines of novation and ratification, and there was no fraud in the inducement. The trial court granted the motion for dismissal.

### Motion to Dismiss

Cardtronics USA and Cardtronics Mexico moved for dismissal, arguing that Texas was not the appropriate venue or law to govern the instant case. William Bush argued that the original English Contract's forum selection clause should govern, and, accordingly, Texas should be the applicable law and venue for this case. Bush argued that the Spanish Contract was inapplicable to him as an individual because there was no evidence establishing ratification or novation, the Spanish Contract was fraudulently induced, and he performed under the English Contract.

6

## A. Standard of Review

We review the trial court's grant of a motion to dismiss for abuse of discretion. *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.,* 177 S.W.3d 605, 610 (Tex. App.—Houston [1st Dist.] 2005, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court abuses its discretion in enforcing a forum selection clause if the non-movant clearly shows that (1) enforcement would be unreasonable or unjust; (2) the clause is invalid because of fraud or over-reaching; (3) enforcement would contravene a strong public policy of the forum where the suit was brought; or (4) the selected forum would be seriously inconvenient for trial. *See In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 231–32 (Tex. 2008). Even if this Court would decide the matter differently, this does not establish an abuse of discretion. *Downer*, 701 S.W.2d at 242.

## B. Applicable Law

As an initial matter, Bush argues that the trial court's determination that the forum-selection clause in the Spanish Contract applied to him could not have been made in the context of a motion to dismiss. Instead, Bush argues that "this type of inquiry does not fall under a relaxed discretionary standard for dismissals, but

rather the summary judgment standard for contract excuses and defenses." We disagree.

The test for whether a forum selection clause will be enforced has changed over time in Texas. *See Phoenix Network*, 177 S.W.3d at 611–614. In that time, however, it has always been a requirement that the movant establish that there is a contract with a forum-selection clause enforceable against the parties to the suit. *See id.* at 612 n.6. Also in that time, the standard of review for rulings on motions to dismiss has remained the same. *See id.* at 610 (abuse of discretion); *Mercure Co., N.V. v. Rowland*, 715 S.W.2d 677, 681 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (same). To the extent that our review involves contractual interpretation of a forum-selection clause—a legal matter—the standard of review is de novo. *Phoenix Network*, 177 S.W.3d at 610.

Accordingly, we apply the abuse of discretion standard of review established by the Supreme Court of Texas. That standard requires that we determine whether Cardtronics Mexico established that it had a valid forum-selection clause enforceable against Bush and, if it did, whether Bush established that the forum-selection clause was procured by fraud or that enforcement of trial in Mexico under the clause would be unjust or would contravene a strong public policy or would be seriously inconvenient. *See In re Lyon Fin. Servs.*, 257 S.W.3d at 231–32. We

turn first, therefore, to whether Cardtronics Mexico established that the forum-selection clause in the Spanish Contract was valid and enforceable against Bush.

## C.      Applicability of Forum-Selection Clause in Spanish Contract to Bush

Bush argues in his first three issues that, because he is not a signatory to the Spanish Contract, did not agree to that contract, and did not ratify it, and because the Spanish Contract did not replace the earlier English Contract by novation, the forum selection clause in the Spanish Contract does not apply to him. Cardtronics Mexico, in response, presents two arguments for why, despite Bush's failure to execute the Spanish Contract, that Contract does apply to him: (1) Bush ratified the Spanish Contract by his actions following its execution and (2) the Spanish Contract replaced the English Contract through novation.

"When a party seeks to enforce a forum-selection clause against a nonsignatory to the contract containing the forum-selection clause, that party bears the burden to prove the theory upon which it relies to bind the nonsignatory to the contract." *CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 895 (Tex. App.—Dallas 2007, pet. denied). To sustain Cardtronics Mexico's ratification theory, the trial court was required to determine whether Cardtronics Mexico had presented sufficient evidence that Bush was subject to the forum selection clause in the Spanish Contract. We hold there was sufficient evidence for

9

the trial court to have determined that the forum selection clause in the Spanish Contract applied to Bush through ratification.

Ratification occurs when a party recognizes the validity of a contract by acting under it, performing under it, or affirmatively acknowledging it. *Wetzel v. Sullivan, King & Sabom, P.C.*, 745 S.W.2d 78, 81 (Tex. App.—Houston [1st Dist.] 1988, no writ) (citing *United States v. McBride*, 571 F. Supp. 596 (S.D. Tex. 1983)). Ratification of an act may be express, or it may be implied from course of conduct. *Petroleum Anchor Equip., Inc. v. Tyra*, 419 S.W.2d 829, 834 (Tex. 1967). Further, a party may not, in equity, ratify those parts of a transaction that are favorable and disclaim those which are unfavorable. *Land Title Co. of Dall. v. F. M. Stigler, Inc.*, 609 S.W.2d 754, 757 (Tex. 1980). Instead, ratification extends to the entire transaction. *Id.*

The evidence establishes that Bush could not operate directly with Cardtronics Mexico due to Mexican law. It was for this reason that the Spanish Contract was created. In 2007, Moreno's assistant directed Cardtronics Mexico to send all commissions to Mari Marc. Soon after, Bush contacted Cardtronics Mexico to put the new distributor agreement (the Spanish Contract) in Mari Marc's name and send it to Moreno to sign.

Nevertheless, Bush was involved in reviewing the Spanish Contract before it was signed. Moreno, the sole legal director of Mari Marc, testified, "We both

looked that the -- saw the [Spanish] contract, and saw that it was a distribution contract. And he told me to go ahead." Once the Spanish Contract was signed, Bush operated under it.

In his deposition, Bush admitted that he was "focused on the entire business. Antonio [Moreno] had very, very little to do with the day-to-day operation of Mari Marc." Additionally, in an email between Bush and representatives of Cardtronics Mexico, Bush asserted his high level of control at Mari Marc:

> I put Antonio [Moreno] to the fire last week over this financial deal, and he came back the next day with a promissory note. If I move forward with Cardtronics owning the machines, I made it clear that Antonio would lose his partnership in the business for failure to perform.

Consequently, William Bush was operating under the Spanish Contract through Mari Marc. Specifically, in his affidavit, Gio Locandro, Senior Vice President of Business Development Americas for Cardtronics USA, testified that Mari Marc had signed up 88 merchants since the signing of the Spanish Contract.

Similarly, the answers to the interrogatories that Mari Marc responded to in the litigation were prepared by Bush. In them, Bush acknowledged that Mari Marc's business operations were in pursuit of the Spanish Contract.

> Interrogatory 11: Identify all Product units sold *pursuant to the Spanish Contract*. Your answer should include the date the Site Location Agreement was signed, the identity of the Site Manager, and the location of the Site.

Response:        Any Product units sold after May 2007 were pursuant to the Spanish Contract. Defendants have greater access to this information.

(Emphasis added.)

There is evidence in the record supporting the claim that Bush, knew of, ratified, and acted under the Spanish Contract from its inception. Accordingly, we hold the trial court did not abuse its discretion by determining that the Spanish Contract as a whole applied to Bush.

We overrule Bush's first three issues.

## D.    Invalidity of Forum-Selection Clause in Spanish Contract

Bush argues in his fourth issue, that Cardtronics Mexico's forum selection clause in the Spanish Contract is precluded by fraud in the inducement. He argues that representations made by employees of Cardtronics Mexico led him to believe that the Spanish Contract would be identical to the English Contract except for the change in parties—Mari Marc instead of William Bush—that he did not see the Spanish Contract, and that, therefore, he was fraudulently induced to agree to the forum selection clause in that contract. That being so, he argues, the courts must apply the forum selection clause in the English Contract.

"A forum-selection clause is generally enforceable, and the burden of proof on a party challenging the validity of such a clause is heavy." *Lyon Fin. Servs.*, 257 S.W.3d at 232. "The party seeking to enforce a contractual forum-selection

provision has the initial burden of establishing that the parties entered into an agreement to an exclusive forum and that the agreement applies to the claims involved." *Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 262 (Tex. App.— Austin 2010, pet. dism'd) (citing *Phoenix Network*, 177 S.W.3d at 611–12 & n.6). Once the movant carries that burden, the burden then shifts to the nonmovant. *Id.* "A forum-selection clause is generally enforceable, and the burden of proof on a party challenging the validity of such a clause is heavy." *Lyon Fin. Servs., Inc.*, 257 S.W.3d at 232.

"[F]raudulent inducement to sign an agreement containing a dispute resolution agreement such as an arbitration clause or forum-selection clause will not bar enforcement of the clause unless the specific clause was the product of fraud or coercion." *Id.* The party seeking to enforce the forum-selection clause is not obligated to prove that it specifically showed the clause to the opposing party as a condition of enforcement. *In re Int'l. Profit Assocs., Inc.*, 286 S.W.3d 921, 924 (Tex. 2009). Consequently, Bush had the burden of proof before the trial court to establish fraud in the inducement of the forum selection clause specifically, as opposed to fraud in the inducement of the Spanish Contract as a whole.

Bush argues that representatives of Cardtronics Mexico misrepresented the contents of the Spanish Contract as a whole and inappropriately sent the contract to

Antonio Moreno to be signed. Specifically, in his deposition, Bush alleged the following:

> They didn't let me see the Spanish Contract before it was signed. And I asked for it, and they sent it to my partner and told me it was an exact translation of the Spanish Contract—excuse me—the English Contract into Spanish with no changes—besides Will Bush being replaced with Mari Marc.

Bush told Cardtronics Mexico directly that the contract needed to be sent to Moreno for signature, as Moreno was the legal representative of Mari Marc. Similarly, the email between Cardtronics Mexico and Bush on July 17, 2006, specifically stated that Cardtronics Mexico would be developing a contract that incorporated Mexican law and that the English Contract was a "good base point." This argument is no argument, however, that the forum selection clause—and not the contract as a whole—was fraudulently induced. *See Lyons Fin. Servs.*, 257 S.W.3d at 232.

Moreover, a party cannot avoid a contract simply by failing to read it. *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007). Nor must the party seeking to enforce a forum selection clause prove that it specifically showed the clause to the opposing party as a condition of enforcement. *Int'l. Profit Assocs., Inc.*, 286 S.W.3d at 924. Bush knew a new contract was being drafted, and he directed Cardtronics Mexico to send the contract to Moreno. Bush emailed Cardtronics Mexico explaining his intent:

14

> When we last spoke in person, I requested the distributorship agreement to be put to Mari Marc, we decided it was best to wait until the distributorship had been fully translated into Spanish and then we could sign under Mari Marc. . . .

In his deposition, Moreno testified that he and Bush reviewed the contract. Additionally, Moreno initialed every page of the Spanish Contract, and the Mexican forum selection clause was on the signature page of the contract. Even if he was unaware of the change in the forum selection provision, Bush has failed to establish how he was prevented from discovering them beyond his own failure to review the contract.

We hold the trial court did not abuse its discretion by rejecting Bush's fraud in the inducement argument.

We overrule Bush's fourth issue.

### Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Massengale.