# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00621-CV

**Toll Austin, TX, LLC, Appellant**

**v.**

**Brent Dusing and Elizabeth Dusing, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
## NO. D-1-GN-16-002196, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this case we are asked to consider whether subsequent purchasers of a home are bound by an arbitration provision contained in a sale agreement and warranty entered into by the original owner of the home and the home builder. In this interlocutory appeal, Toll Austin, TX, LLC, the builder, appeals the trial court's denial of its "Plea in Abatement" asking the court to "permanently abate" the lawsuit filed against Toll by appellees Brent and Elizabeth Dusing "in favor of binding arbitration." While not styled as a "Motion to Compel," the parties and trial court addressed the issues contained in Toll's plea in abatement as if it were a motion to compel arbitration by considering whether there was a binding arbitration agreement between the parties. *See* Tex. Civ. Prac. & Rem. Code § 171.021(a) ("A court shall order the parties to arbitrate on application of a party showing: (1) an agreement to arbitrate; and (2) the opposing party's refusal to arbitrate."). We

will consider the trial court's order denying Toll's "Plea in Abatement" as also denying Toll's implicit motion to compel arbitration and will affirm the order.

**BACKGROUND**

In 2015 the Dusings purchased the home at issue from Brodney Pool, who in 2005 entered into an Agreement of Sale and Limited Builder's Home Warranty with Toll (collectively, the Toll-Pool Agreement) for the construction and purchase of the home. The Toll-Pool Agreement contained an arbitration provision. Shortly after moving into the home, the Dusings filed a lawsuit against Toll, asserting claims of negligence and DTPA violations due to faulty construction, based on alleged water infiltration into the home. Toll filed a "Plea in Abatement," attaching a copy of the Toll-Pool Agreement and asserting that the trial court was required to order the parties to arbitration based on the provisions contained therein and section 171.021 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 171.021(a). After a hearing, the trial court denied Toll's plea, and Toll appeals.

**DISCUSSION**

***Whether we have subject-matter jurisdiction over this interlocutory appeal***

We first consider the issue of whether this Court has subject-matter jurisdiction over this interlocutory appeal, which the Dusings raise in their appellees' brief, contending that the trial court's order denying Toll's plea in abatement is an unappealable interlocutory order because no case law or statute allows for a party to appeal an order denying or granting a plea in abatement. *Walker Sand, Inc. v. Baytown Asphalt Materials, Ltd.*, 95 S.W.3d 511, 516 (Tex. App.—Houston

2

[1st Dist.] 2002, no pet.) (dismissing interlocutory appeal for lack of subject-matter jurisdiction because "[n]either [Civil Practices and Remedies Code] section 171.098, nor any other statute, provides for an interlocutory appeal of an order denying a motion to stay or abate the trial court's proceedings"); *see* Tex. Civ. Prac. & Rem. Code § 171.098(a) ("A party may appeal a judgment or decree entered under this chapter or an order: (1) denying an application to compel arbitration made under Section 171.021 . . . ."). The Dusings contend that Toll "never asked the Trial Court to compel arbitration" but merely asked it to "abate" the proceedings "in favor of arbitration" and, therefore, the trial court's order denying Toll's plea in abatement does not fall under section 171.098, which we must construe strictly. *See* Tex. Civ. Prac. & Rem. Code § 171.098(a); *America Online, Inc. v. Williams*, 958 S.W.2d 268, 271 (Tex. App.—Houston [14th Dist.] 1997, no pet.) ("Texas courts strictly construe statutes authorizing interlocutory appeals.").

However, it is the substance and function of the order being appealed, viewed in the context of the record, that controls our interlocutory jurisdiction, not a party's characterization or the caption of the order. *Chapa v. Chapa*, No. 04-12-00519-CV, 2012 WL 6728242, at *5 (Tex. App.—San Antonio Dec. 28, 2012, no pet.) (mem. op.) ("Our interlocutory jurisdiction is controlled by the substance and function of an order, viewed in the context of the record, not the title or form of the order or the parties' characterization of the order."); *Walker Sand, Inc.*, 95 S.W.3d at 515 (citing *Markel v. World Flight, Inc.*, 938 S.W.2d 74, 78 (Tex. App.—San Antonio 1996, no writ)); *see also Del Valle Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992) ("We reject the notion that . . . matters of form control the nature of the order itself—it is the character and function of an order that determines its classification."). Without elaboration, the court's order simply denies

3

Toll's "Plea in Abatement." It follows, then, that we must turn to the language of the plea to determine whether it can properly be characterized as an application to compel arbitration and whether the order is, therefore, appealable. *Walker Sand, Inc.*, 95 S.W.3d at 515; *In re Bridges*, 28 S.W.3d 191, 195 (Tex. App.—Fort Worth 2000, orig. proceeding) ("A motion's substance is not to be determined by its caption . . . but from the body and prayer for relief."); *Mercer v. Band*, 454 S.W.2d 833, 835 (Tex. Civ. App.—Houston [14th Dist.] 1970, no writ) (same).

Toll's "Plea in Abatement," to which its "Original Answer [was] Subject Thereto," cited civil practice and remedies code section 171.021(a), asserting that the trial court "is required to order the parties to arbitrate" "upon the showing of an agreement to arbitrate between the[] parties," and that "[a]ll of Plaintiff's claims against [it] arise solely from [the attached and incorporated Toll-Pool Agreement, which] contain[s] valid and enforceable arbitration clauses." Its plea went on further to: (1) request the court to "abate these proceedings in favor of arbitration" "pursuant" to section 171.021(a); (2) represent that the Dusings refused to abate and arbitrate, despite Toll's request; and (3) pray that the Dusings' lawsuit "be permanently abated in favor of binding arbitration." In its "Brief in Support of [its] Plea in Abatement," Toll stated that it "has moved the Court to compel arbitration based upon the arbitration clause contained in [the Toll-Pool Agreement] which [the Dusings] are claiming under." At the hearing on the plea in abatement, Toll's counsel argued to the trial court that the court "need[ed] to abate this case and send it to arbitration."

In their "Response to [Toll's] Plea in Abatement" and at the hearing, the Dusings argued that they had no contractual privity with Pool; that they did not sign the contracts containing the arbitration clauses at issue; and that, in any case, they were not making any warranty or other

4

claims under the Toll-Pool Agreement. Upon denying Toll's plea in abatement, the trial court issued a letter to the parties further explaining the "basis for its ruling," noting that the "real issue in this case is whether Plaintiffs, as non-signatories to the contract containing the arbitration clause in question, can be bound by the arbitration provision" (citing *Stanford Dev. Corp. v. Stanford Condo. Owners Ass'n*, 285 S.W.3d 45 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (holding that where non-signatory to contract was asserting breach of that contract, it was bound by arbitration under estoppel principles); *Edwards v. Schuh*, 5 S.W.3d 829 (Tex. App.—Austin 1999, no pet.) (holding that subsequent purchaser of building suing builder for breach of express and implied warranties is not bound by arbitration clause in construction contract where no evidence showed purchaser was third-party beneficiary)).

We conclude that, in the context of this record—including the substance contained in Toll's plea in abatement and related pleadings as well as the record of the hearing on the plea—Toll's plea functioned as both a motion to abate and a motion to compel arbitration and we, therefore, have subject-matter jurisdiction over the trial court's order denying the plea, which we will review as an order denying a motion to compel arbitration despite its caption. *See* Tex. Civ. Prac. & Rem. Code § 171.098(a)(1); *see also Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013) (providing that when appellate court reviews order denying motion to compel arbitration, it defers to trial court's factual determinations that are supported by evidence but reviews its legal determinations de novo).

***Whether the trial court erred in refusing to order the parties to binding arbitration***

Toll makes four arguments on appeal supporting its contention that the trial court erred in denying its plea and not ordering the parties to binding arbitration: (1) the Dusings, as subsequent purchasers of the home, were bound by the arbitration agreement as "successors" of Pool; and, even if the Dusings were not "successors" and are thus non-signatories to the arbitration agreement, they are nonetheless bound by its terms (2) under the doctrine of direct-benefits estoppel; (3) because they "impliedly assumed" the Toll-Pool Agreement; and (4) because of the "economic loss rule." We will address each argument in turn but begin by noting the general rule that parties must sign arbitration agreements to be bound by them. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding).

This Court has recently rejected the argument that by merely purchasing a home, a subsequent owner of that home is a "successor" to the original homeowner with whom the homebuilder had an agreement. *See Zbranek Custom Homes, Ltd. v. Allbaugh*, No. 03-14-00131-CV, 2015 WL 9436630, at *4 (Tex. App.—Austin Dec. 23, 2015, pet. denied) (citing *Farm & Home Sav. Ass'n v. Strauss*, 671 S.W.2d 682, 685 (Tex. App.—Dallas 1984, no writ)). The term "successor" requires more than that. *See Strauss*, 671 S.W.2d at 685 (holding that where sales contract bound parties and their successors and assigns, term "successor" was "term of art which does not encompass third party purchasers" of property). Toll has cited no evidence or factual allegations in the record that would support its bare contention that the Dusings are the legal "successors" of Pool. Accordingly, we reject Toll's "successor" argument supporting its contention that the Dusings are bound by the arbitration provision in the Toll-Pool Agreement.

We next consider Toll's argument that the Dusings are bound by the arbitration provisions under the direct-benefits-estoppel doctrine. *See, e.g.*, *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (orig. proceeding). Under that doctrine, it is not enough that a non-signatory's claim "relate" to a contract containing an arbitration provision; rather, the non-signatory will be bound to arbitrate a claim only if it seeks, "through the claim, to derive a direct benefit from the contract containing the arbitration provision." *Id.*; *see G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527–28 (Tex. 2015) (orig. proceeding); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131–32 (Tex. 2005) (orig. proceeding); *cf. In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001) (orig. proceeding) (holding that because nonparties asserted claims identical to signatories' contract claims, all claims had to be arbitrated). Whether a claim "seeks a direct benefit from a contract containing an arbitration provision clause turns on the substance of the claim, not artful pleading." *In re Weekley Homes*, 180 S.W.3d at 131–32. "Claims must be brought on the contract (and arbitrated) if liability arises solely from the contract or must be determined by reference to it. On the other hand, claims can be brought in tort (and in court) if liability arises from general obligations imposed by law." *Id.* at 132.

The Dusings' claims asserting negligence and DTPA violations do not arise solely from the Toll-Pool Agreement; rather, Toll's alleged liability arises from general obligations imposed by common-law negligence and relevant statutes, and based on the substance of their pleadings the Dusings do not seek to derive any benefit from the Toll-Pool Agreement. *See Gupta v. Ritter Homes, Inc.*, 633 S.W.2d 626, 628 (Tex. App.—Houston [14th Dist.] 1982) (holding that privity of contract is not prerequisite for subsequent purchaser of home to sue builder for breach of

duty to exercise ordinary care in construction of home), *aff'd in relevant part, rev'd in part on other grounds*, 646 S.W.2d 168 (Tex. 1983); *see also Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718–19 (Tex. 2014) ("A party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit."). Accordingly, we conclude that the Dusings are not bound by the arbitration provision under the direct-benefits-estoppel doctrine.

Toll next contends that the Dusings "impliedly assumed" the Toll-Pool Agreement merely by virtue of purchasing the home. *See Creative Artists Agency, LLC v. Las Palmas Race Park, LLC*, No. 13-14-00015-CV, 2015 WL 6652655, at *3 (Tex. App.—Corpus Christi-Edinburg Oct. 29, 2015, no pet.) (mem. op.) ("[A]n assignor of a contract remains liable for the obligations he originally assumed, even after the contract is assigned and 'the assignee of a contract is not responsible for the assignor's obligations unless he expressly or impliedly assumed them.'" (quoting *NextEra Retail of Tex., LP v. Investors Warranty of Am., Inc.*, 418 S.W.3d 222, 226–27 (Tex. App.—Houston [1st Dist.] 2013, pet. denied))). However, the "assumption" theory by which non-signatories may be bound to arbitration agreements only applies to contracts that have been *assigned* from one party to another. *See id.* (discussing assumption theory in context of assignment of contract); *see also Zbranek Custom Homes*, 2015 WL 9436630, at *5 (holding that subsequent purchasers were not "assignees" of original home buyers where contract provided that no party had right to assign contract without written consent, and there was no evidence of assignment or consent). The Toll-Pool Agreement specifically provided that "Buyer may not transfer, sell or assign this Agreement," and Toll has provided no citations to the record or any authority that would support a contention that the Dusings are assignees of the Toll-Pool Agreement. We reject Toll's third argument.

8

Lastly, Toll contends that the Dusings are prohibited from making any claims besides contractual claims by virtue of the "economic loss rule." *See LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 243 (Tex. 2014) ("Texas courts of appeals have uniformly applied the economic loss rule to deny recovery of purely economic losses in actions for negligent performance of services."). However, Toll's citation of this rule has no application in the appeal before us because it is not one of the six exceptions to the general rule that a non-signatory is not bound by an arbitration clause. *See In re Kellogg Brown & Root*, 166 S.W.3d at 739 (listing six recognized theories, arising out of common principles of contract and agency law, that may bind non-signatories to arbitration agreements). Moreover, the supreme court has specifically held that the economic-loss rule does *not* bar all tort claims arising out of a contractual setting because by allowing a party to avoid tort liability simply by entering into a contract with another, the rule would "swallow all claims between contractual and commercial strangers." *See Chapman Custom Homes*, 445 S.W.3d at 717 (holding that plumber's duty not to flood or otherwise damage home is independent of any obligation undertaken in plumbing subcontract with builder, and damages allegedly caused by breach of that duty extend beyond economic loss of any anticipated benefit under plumbing contract). We reject Toll's final argument.

**CONCLUSION**

Having construed Toll's "Plea in Abatement" as requesting the trial court to compel the parties to binding arbitration, we affirm the trial court's denial of Toll's "Plea in Abatement."

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   December 7, 2016